# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff<br><br>v.<br><br>Jamal William,<br><br>　　　　Defendant | Case No.: 2:17-cr-00124-10-JAD-EJY<br><br>**Order Denying Motion for Transfer to Home Confinement or Compassionate Release**<br><br>[ECF No. 477] |

Defendant Jamal William asks this court to allow him to serve the remainder of his nine-month sentence for conspiracy to distribute a controlled substance from his home in North Las Vegas because he suffers from severe asthma and sclerosis, and releasing him from prison will give him a better chance to avoid the Coronavirus (COVID-19).[1]  I deny his motion because William has not shown that such relief is warranted.

## Background

In 2019, William pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846.[2]  In his plea agreement and at his plea hearing, William admitted that he made an agreement with his co-defendants to unlawfully obtain and resell Oxycodone pills and that he personally received and sold about 210 Oxycodone (15 mg) pills during the conspiracy.  He was sentenced to nine months in custody followed by three years of supervision.[3]  He is currently serving his sentence at the Metropolitan Detention

---

[1] ECF No. 477 (motion).

[2] ECF No. 227 (plea agreement).

[3] ECF No. 361 (judgment).

Center in Los Angeles (MDC-LA), and the Bureau of Prisons' (BOP) website reflects a September 13, 2020, release date for William.[4]

In a pro se motion, 36-year-old William asks this court to release him to home confinement in North Las Vegas for the two-month remainder of his sentence.[5] The government opposes his motion, noting that the authority to designate an inmate to home release rests exclusively with the BOP, not the court; and to the extent that William is seeking compassionate release, he has not demonstrated that such relief is warranted.[6]

## Discussion

A sentencing court's ability to modify or reduce a sentence once it's imposed is seriously limited.[7] The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[8] is an exception to this limitation. It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[9] The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[10] The court may entertain an inmate's request for compassionate release under 18 U.S.C.

---

[4] *Federal Inmates by Number*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results (last visited July 24, 2020).

[5] ECF No. 477. The Federal Public Defender's Office declined to supplement William's pro se motion. *See* ECF No. 478.

[6] ECF No. 484.

[7] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[8] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[9] 18 U.S.C. § 3582(c)(1)(A)(i).

[10] *Id*.

§ 3582(c)(1)(A)(i) only (1) "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[11]

Assuming without deciding that William has exhausted the administrative process,[12] I deny his motion on its merits because he has not demonstrated that his compassionate release is warranted. William's reasons for wanting release are neither extraordinary nor compelling. The COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented. But the BOP has implemented a detailed COVID-19 response plan for federal inmates, and the low number of reported COVID-19 cases at MDC-LA suggests that the plan is effective.[13] The BOP's website reflects that only two inmates and two staff members at MDC-LA are currently COVID-19 positive.[14]

Though William's age does not make him high-risk,[15] he argues that his two medical conditions, severe asthma and sclerosis put him at a higher risk of serious illness from COVID-19.[16] But the Centers for Disease Control and Prevention (CDC) list moderate-to-severe asthma

---

[11] *Id.*

[12] The government does not dispute that William has exhausted the administrative process as required to file this motion. *See, e.g.*, ECF No. 484.

[13] *BOP Implementing Modified Operation,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 27, 2020).

[14] *See COVID-19: Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 27, 2020).

[15] *See* ECF No. 484 at 12 (stating that William is 36 years old). The Centers for Disease Control and Prevention website reports that in the United States approximately 80% of COVID-19 related deaths have been among adults aged 65 years or older. *See Older Adults and COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 24, 2020).

[16] ECF No. 477 at 2.

as a condition that only *might* put people at an increased risk of severe illness from COVID-19.[17] Sclerosis is not on the CDC's list of risk factors at all.[18] And although it's possible that William meant *scoliosis*, which his records reflect he has (not sclerosis), scoliosis is also not listed as a factor in increasing COVID-19 risk.[19] Simply put, the concerns that William has identified fall short of the extraordinary or compelling ones needed to justify compassionate release.

But even if William's medical conditions in prison during this pandemic did qualify as extraordinary and compelling reasons for compassionate release, the applicable § 3553(a) factors do not justify a sentence reduction for him. William's offense was serious, he participated in a months-long drug ring, selling highly-addictive prescription pills with a dozen participants in Las Vegas and Henderson. His criminal history includes prior felony convictions for attempted burglary and attempted illegal firearm possession, and prior misdemeanor drug possession convictions.

Of course, I do not overlook the positive information for William on the other end of the § 3553(a) spectrum. He states that he has maintained good behavior during his time in

---

[17] *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 27, 2020) (providing that "people with the following conditions **might be at an increased risk** for severe illness from COVID-19" and listing "Asthma (moderate-to-severe)" as one such possibility) (emphasis in the original), *with id.* (listing illness for which "[p]eople of any age with the following conditions **are at increased risk** of severe illness from COVID-19") (emphasis in the original).

[18] *Id.*

[19] *See* ECF No. 484 at 12 (William's PSR and BOP medical records indicate that William has scoliosis, not sclerosis). *See also* ECF No. 484 at 12 ("[T]he government has been unable to locate any information that scoliosis places an individual at any increased risk from Covid-19"). *See also Multiple Sclerosis & Coronavirus*, NATIONAL MULTIPLE SCLEROSIS SOCIETY, https://www.nationalmssociety.org/coronavirus-covid-19-information/multiple-sclerosis-and-coronavirus (last visited July 24, 2020) ("Current evidence suggests that simply having MS does not increase the risk of dying from COVID-19").

custody,[20] that he would be able to return to his home and be supported by his wife,[21] and that he can obtain employment with the construction company he worked for before he was incarcerated.[22]  During sentencing, I considered similar factors, including William's good behavior on pretrial supervision, the significant lapse in time since his prior offenses, his family support, and his commitment to maintaining gainful employment.  Indeed, the nine-month sentence he received was well below his guideline imprisonment range because of these positive factors.  Because I already credited him with those characteristics when reaching my original sentencing determination, however, I do not find that those factors now justify a further reduction in his already lenient imprisonment term, especially given the low rate of COVID-19 cases at MDC-LA and William's lack of serious health risk factors.

## Conclusion

IT IS THEREFORE ORDERED that Defendant Jamal William's Motion for Compassionate Release **[ECF No. 477] is DENIED.**

Dated: July 27, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[20] ECF No. 477 at 3.
[21] *Id*. at 5.
[22] *Id*.